UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANUEL ALLENDE & VIDAL ESPINO,                    :

                   Plaintiffs,                    :          10 Civ. 4256 (AJP)

            -against-                    :          **OPINION AND ORDER**

UNITECH DESIGN, INC. & CHANG KON HAHN,  :

              Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

          Plaintiffs Manuel Allende and Vidal Espino brought this action against their former employer, Unitech Design, Inc. and its President and C.E.O., Chang Kon Hahn, pursuant to the Fair Labor Standards Act and New York Labor Law, for unpaid overtime wages.  (Dkt. No. 1: Compl. ¶¶ 1, 9, 18-22, 42-48.)  On January 28, 2011, the parties reached a settlement as to plaintiffs' damages, but were unable to settle the issue of plaintiffs' statutory attorneys' fees.  (See Dkt. No. 24: Pls. Atty. Fee Br. at 1; Dkt. No. 26: Defs. Atty. Fee Opp. Br. ¶ 2; Dkt. No. 28: Choi Aff. ¶ 2; Dkt. No. 30: Goodell Supp. Aff. ¶ 2.)

          Presently before the Court is plaintiffs' motion for attorneys' fees and costs of $98,369.22.  (Dkt. No. 23: Notice of Motion; see generally Pls. Atty. Fee Br.; Dkt. No. 25: Goodell Aff.)  The parties have agreed to my decision of this case pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 9, 11: § 636(c) Consents.)

For the reasons set forth below, the Court grants plaintiffs' motion in part and awards plaintiffs $91,788 in attorneys' fees and costs.

## **DISCUSSION**

### **Plaintiffs' Are Entitled to An Award of Attorneys' Fees**

Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosp. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . . .'"); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug 13, 2009) (Lynch, D.J.) ("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").

Indeed, defendants do not dispute plaintiffs' entitlement to attorneys' fees, but dispute only the quantum of those fees.  (See Dkt. No. 26: Defs. Atty. Fee Opp. Br. ¶¶ 3-21, 24.)

While the requested attorneys' fees exceed plaintiffs' own recovery in the case, that is of no matter.  In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.  See, e.g., Tucker v. City of N.Y., 704 F. Supp. 2d 347, 359 n.10 (S.D.N.Y. 2010) ("[S]ettled case law [is] that the setting of statutory [attorneys'] fees does not require proportionality between the plaintiff's recovery and the amount of the fee award." (citing City of Riverside v. Rivera, 477 U.S. 561, 106 S. Ct. 2686 (1986)); Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 512 (S.D.N.Y. 2010) (Chin, D.J.) ("The courts have rejected a per se proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved."); Grochowski v. Ajet Constr. Corp., 97 Civ. 6269, 2002 WL 465272 at *2 (S.D.N.Y. Mar. 27, 2002) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'  Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . 'encourage[s] the vindication of congressionally identified policies and rights.'"); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 519-20 & n.7 (S.D.N.Y. 2002) (Chin, D.J.) ("[A] limited monetary recovery does not preclude a substantial attorneys' fee award, for there is no requirement of proportionality.").[1]

---

[1] Defendants assert that for "public policy reasons," because of defendants' limited resources, the attorneys' fees and costs should be "reduced to a much lesser and reasonable amount to be just and fair for all parties," and not put Unitech out of business causing "collateral (continued...)

**The Lodestar Method of Determining Reasonable Attorneys' Fees**

As the fee applicant, plaintiffs "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[2/]

---

[1/]    (...continued)
damages on the defendants' current employees."  (Defs. Atty. Fee Opp. Br. ¶ 24.) Defendants have not cited any legal authority for this proposition, and the Court's research has not found any cases reducing plaintiffs' fee awards in FLSA cases (or in the related area of Title VII or other anti-discrimination statutes).  Moreover, even if defendants' financial condition could be an equitable factor considered by the Court, defendants have not proffered any evidence of their financial condition, which in any case is better than that of their former employees. Cf. Harrell v. Van der Plas, 08 Civ. 8252, 2009 WL 3756327 at *7 (S.D.N.Y. Nov. 9, 2009) (Lynch, D.J.) ("[C]ourts in this district have noted that a party's mere 'lack of resources is not relevant to whether an award of fees is appropriate'" in copyright case, although "'the relative financial strength of the parties [may be considered if it] is so disproportionate that the purposes of the Copyright Act will be served by a relatively small [attorneys' fee] award.'"  No equitable reduction in any event because defendant "offers no concrete information about either his personal assets or the assets of his . . . company."). Indeed, defendants' sales average $1 million a year. (See Dkt. No. 30: Goodell Supp. Aff. Ex. D: C. Hahn Dep. at 29; Dkt. No. 29: Pls. Atty. Fee Reply Br. at 9-10.)

[2/]    Accord, e.g., N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933,should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[3/]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the

---

[3/]     The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that <u>roughly</u> approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the <u>Johnson</u> approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, <u>i.e.</u>, providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[4/]

**Reasonable Hourly Rates**

Plaintiffs' "fee calculation uses an hourly rate of $450 for Goodell, $300 for Swaminathan, $300 for Gross, $275 for Michels, $125 for law clerks and $100 for paralegals." (Dkt. No. 24: Pls. Fee Br. at 6; see Dkt. No. 25: Goodell Aff. ¶¶ 24-38.)  Unhelpfully, "[w]ith respect to [the] hourly rates of plaintiffs' attorneys, [defendants] defer to the court's determination as to its reasonableness although [defendants] feel they are somewhat overly rated."  (Dkt. No. 26: Defs. Atty. Fee Opp. Br. ¶ 22.)

There can be no doubt that plaintiffs' law firm, Vladeck, Waldman, Elias & Engelhard, P.C., is a well-known and highly respected law firm that "concentrates in representing individuals in employment and labor related matters."  (Goodell Aff. ¶ 24.)  See, e.g., Pappas v. Watson Wyatt & Co., No. 3:04CV304, 2008 WL 45385 at *6 (D. Conn. Jan. 2, 2008) ("The Vladek Firm . . . [has] achieved success in this and in other cases by demonstrating not only superior legal skills, but also by being thorough in performing their work.").

Goodell graduated from law school in 2001 and is a partner at the Vladeck firm. (Goodell Aff. ¶ 26.)  The Vladeck firm charges clients hourly fees and also takes cases on a contingent fee basis.  (Goodell Aff. ¶¶ 27-28.)  Goodell's regular billing rate to clients is $450. (Goodell Aff. ¶ 27.)

---

[4/]    The Supreme Court's Perdue opinion appears to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190, which relied on among other factors, the Johnson factors.  In any event, the result would not differ here even if the Court used the Arbor Hill approach.

Swaminathan, a 2001 law school graduate, worked on this case until he left the Vladeck firm in October 2010.  (Goodell Aff. ¶¶ 25, 29.)  Swaminathan was replaced on the case by Michels, a 2007 law school graduate.  (Goodell Aff. ¶¶ 25, 30.)  The Vladeck firm charged clients $300 for Swaminathan's time and charges $275 for Michel's time.  (Goodell Aff. ¶¶ 29-30.)

Gross does not work for the Vladeck firm; rather, he is executive director of Brandworkers International, "a non-profit organization that protects the rights of retail and food employees."  (Goodell Aff. ¶ 31.)  Gross graduated from law school in 2007, and "Brandworkers charges $300 per hour" for his time.  (Goodell Aff. ¶ 31.)

Prior decisions have approved these billing rates for Vladeck lawyers, and the rates (including for Gross) are consistent with rates awarded by the courts in other FLSA or similar statutory fee cases.  See, e.g., Pappas v. Watson Wyatt & Co., 2008 WL 45385 at *5 (awarding Vladeck partner $400 per hour, senior associate $300 per hour and junior associates $225 per hour); Wong v. Hunda Glass Corp., 09 Civ. 4402, 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) (reasonable hourly rate for "employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour."); Saunders v. City of N.Y., 07 Civ. 830, 2009 WL 4729948 at *8 (S.D.N.Y. Dec. 9, 2009) (awarding partners with "substantial experience litigating employment matters" $425 per hour and associates between $200 and $300 per hour); see also, e.g., N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 2010 WL 1140720 at *4 (awarding in an ERISA default judgment case $400 per hour for partner and $300 per hour for associate); N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (granting summary judgment in ERISA failure to pay fringe benefit

case and awarding $425 per hour for partners, $300 per hour for associates and $150 per hour for paralegals); N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr., 06 Civ. 13150, 2008 WL 5159777 at *13 (S.D.N.Y. Dec. 9, 2008) (Lynch, D.J.) (awarding in an ERISA default judgement case $425 per hour for partners, $300 per hour for an associate and $150 per hour for paralegals and noting that the rates awarded were "commensurate with those generally charged for similar work in this district").

**The Time Reasonably Expended**

Defendants' counsel argues that plaintiff's counsel's hours should be reduced because of duplication of work by various attorneys, and excessive time spent on certain projects.  (See Dkt. No. 26: Defs. Atty. Fee Opp. Br. ¶¶ 4-21.)  The Court has carefully reviewed plaintiff's counsel's time records.  (Dkt. No. 25: Goodell Aff. Ex. C.)  The Court agrees that there was some duplicative billing for conferences (especially between the Vladeck lawyers and attorney Gross, who acted as "client liaison," see Dkt. No. 29: Pls. Atty. Fee Reply Br. at 4) and some excess time spent on certain projects, but not to the extent argued by defense counsel.  To account for this, the Court will reduce the legal fees sought by 7%.  See, e.g., Trustees of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp., 09 Civ. 9997, 2011 WL 767162 at *5 (S.D.N.Y. Mar. 4, 2011) (Peck, M.J.) (reducing attorneys' fees by 10%); VFS Fin., Inc. v. Pioneer Aviation LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 & n.8 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) (10% fee reduction where "attorneys' billing entries are overly vague or duplicative." (citing cases)); Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 04 Civ. 3854, 2008 WL 4833025 at *7 (S.D.N.Y. May 3, 2008) (Peck, M.J.) (5% across-the-board fee reduction) (citing cases)); Top Banana, L.L.C. v. Dom's

Wholesale & Retail Ctr., Inc., 04 Civ. 2666, 2008 WL 4925020 at *2 (S.D.N.Y. Nov. 10, 2008) (Daniels, D.J. & Peck, M.J.) (5% fee reduction "to take into account attorney hours billed for the performance of paralegal-type work, as well as duplicative charges.").  Thus, plaintiffs should be awarded only $87,432 (93% of the $94,013 requested for fees) in attorneys' fees.

**Costs**

Plaintiffs seek $4,356.22 in costs, the vast bulk of which is for interpreters at depositions and the settlement conference ($1,537.50) and deposition transcripts ($1,249.50).  (Dkt. No. 25: Goodell Aff. ¶ 45 & Ex. D; see also Dkt. No. 30: Goodell Supp. Aff. Exs. A-C.)  Defendants challenge these two amounts as excessive.  (Dkt. No. 26: Defs. Atty. Fees Opp. Br. ¶ 23.)  The Court has examined the invoices for the deposition transcripts (Goodell Supp. Aff. Ex. A) and finds the charges reasonable for the two depositions (at a cost of $4.50 per page).  The $50 hourly rate for a Spanish interpreter for the settlement conference also appears reasonable.  (Goodell Supp. Aff. Ex. C.)  The $1,275 cost for a Korean interpreter for the depositions taken of defendants' witnesses (Goodell Supp Aff. Ex. B) seems high on its face.  The Court, however, accepts plaintiff's counsel's explanation that they were unable to seek competing price quotations because of defendants' failure to respond until the last minute as to whether their witnesses needed an interpreter.  (See Dkt. No. 29: Pls. Atty. Fee Reply Br. at 8.)

Accordingly, the Court will not reduce the requested cost amount, and awards the requested $4,356 for costs.

**CONCLUSION**

For the reasons set forth above, the Court awards plaintiffs $87,432 in attorneys' fees

and $4,356 in costs, for a total of $91,788.  The Clerk of Court shall enter judgment accordingly.

SO ORDERED.

Dated:        New York, New York
              March 15, 2011


                                    _____
                                    **Andrew J. Peck**
                                    United States Magistrate Judge


Copies **by ECF** to:    Maia Beth Goodell, Esq.
                         Yohan Choi, Esq.


H:\OPIN\ALLENDE